**LLOYD E. HATFIELD, Plaintiff**

v.

**ANTILLES SHIPPING CORPORATION, HENRY LAKE and M.V. LOMIST II, Defendants**

Civil No. 1986/7

District Court of the Virgin Islands

Div. of St. Croix

May 13, 1987

DOUGLAS A. BRADY, ESQ., St. Croix, V.I., *for plaintiff*

MARK L. MILLIGAN, ESQ., St. Croix, V.I., *for Henry Lake and M.V. Lomist II*

TODD H. NEWMAN, ESQ., and JOSE E. ALFARO DELGADO, ESQ., St. Croix, V.I., *for Antilles Shipping Corporation*

O'BRIEN, *Judge*

## MEMORANDUM OPINION

THIS MATTER came before us on a nonjury basis, to decide whether the plaintiff, who arranged for his pleasure boat to be towed by defendant Captain Henry Lake and the vessel "Lomist II", can recover for the complete loss of his boat. We find that the captain was negligent and will enter judgment against him and the vessel. We previously dismissed the complaint against Antilles Shipping Corporation, and will formally enter that dismissal as well.

## I. FACTS

Plaintiff Lloyd E. Hatfield ("Hatfield") is a retired civil servant who decided to move to St. Croix and enjoy the fruits of that

retirement. His last duty posting was at Guantanamo Bay, Cuba. In 1981, he purchased a 28-foot cabin cruiser for $6,000. He named it the "Donamay". The boat needed equipment and repair. He cleaned the bilge and lifted the boat out of the water. He coated the surface with fiberglass, gutted the inside and refurbished it, installed a diesel engine and larged both the water and fuel storage capacity. He also installed a new gallery, bulkheads, and a new refrigeration system.

He also installed forward cleats for towing purposes, and strengthened them with eye bolts. All in all, Hatfield, when he was due to retire to St. Croix, had a boat he was proud of, all the more because he did most of the work himself.

He was successful in having the boat transported to San Juan, Puerto Rico, and then set about arranging further transport to St. Croix. He spoke with a shipping agent, Antilles Shipping Corporation and was quoted a price for immediate transport of $500, which could be reduced to $350 if he was willing to wait for another carrier. Hatfield opted to wait and save the money.

Some time later, he was introduced to Henry Lake, captain and owner of the M.V. Fair Hope (now "Lomist II"), for whom Antilles Shipping Corporation acted as agent. Final agreement was reached between Hatfield and Captain Lake to tow Hatfield's boat to St. Croix for $350, and to pay an additional $25 to transport Hatfield's boat trailer on board. Payment was made by Hatfield to Capt. Lake, and a receipt was given to Hatfield through Antilles Shipping Corporation. The date was April 16, 1985.

The towing effort was fraught with misfortune from the start. An antenna broke on Hatfield's boat leaving radio communications more difficult. The towing eyes were torn out and the boat was adrift at the mouth of the bay out of San Juan. It was then determined that a bridle would be used. This is an acceptable method of towing a boat.

Capt. Lake testified that at this point he told Hatfield that he didn't want to tow him, but that Hatfield insisted. From that point on, Lake considered that Hatfield was assuming the risk of damage to his boat and he, Lake, had no further responsibility.

Hatfield himself stayed on his own boat while being towed. The seas were rough and "Donamay" began to take on water. He tried to signal Lake to slow down, but got no response. He did not see anyone on deck despite several attempts to signal. The tossing of his boat on the rough seas made Hatfield seasick.

At this point, lines securing the bridle snapped, causing Hatfield's boat to turn 180 degress and a large wave swamped the boat. Capt. Lake then obviously knew there was trouble, because his own boat began to overheat from the effort of towing the "Donamay" with its excess of water, and it being in the aft position.

The next large wave tossed Hatfield into the water where he encountered ten to twelve foot swells. After a time he estimated at two hours, but other witnesses state was a shorter period, he was able to board Lake's boat.

His own boat disappeared from view and sank, with Hatfield losing all of his personal belongings, clothing and other matters he was transporting on his boat to St. Croix.

Just before he left San Juan, Hatfield had obtained a Condition and Valuation Survey Report in San Juan which placed the value of the vessel as of April 16, 1985, at $18,000. This was, as earlier noted, the date Hatfield and "Donamay" left San Juan under tow for St. Croix.

Hatfield was given the bill of lading for the boat and trailer after he arrived in St. Croix. In a vain effort to locate his boat, he utilized an airplane to make a search.

## II. DISCUSSION

The defendant argues that, initially, any damage award in excess of $500 is barred by the Carriage of Goods by Sea Act (46 U.S.C. § 1300 et seq.). Section 1312 of the Act limits its provisions to ports in foreign trade and thus, by statute, excludes transport between San Juan, Puerto Rico and the U.S. Virgin Islands, both being under the United States flag.

■ But the same section permits inclusion of the provisions of the statute by agreement of the parties expressly made in the bill of lading. The bill of lading which was provided to Hatfield by Lake after the incident when they arrived in St. Croix does incorporate the provisions of the Act.

■ However, we must ask whether the provision of the bill of lading to Hatfield after the incident is sufficient to bring his arrangement within the Act. We find that it does not. Since Hatfield did not know of the terms contained in the bill of lading before the tow began, including his right to place a higher value on the cargo than the $500 limitation, he cannot be held to its terms.

Encyclopedia Britannica, Inc. v. S.S. Hong Kong Producer, 442 F.2d 7, 16–17 (2d Cir. 1969) cert. denied, 397 U.S. 964 (1970).

We find that Capt. Lake was negligent in the manner in which he towed "Donamay". We adopt the testimony of Marine Surveyor Robert Shank, who convincingly demonstrated the elements of Capt. Lake's negligence, including the decision to attempt a tow in the face of the weather conditions described. In addition, Capt. Lake indicated that he noticed the manner in which towing eyes were connected, without strong support. He should have known the towing eyes would not be sufficient in a high seas towing operation.

■ Nor can Capt. Lake disclaim any responsibility by suggesting he was coerced or pressured into going through with the tow. As captain, his vast powers in connection with the operation of "Lomist II" including the power to refuse Hatfield's request. Since we dismissed Antilles Shipping Corporation from the case earlier, the captain and his vessel will stand for the damages.

■ As to those damages, there is only one valuation of significance in evidence, and that is the survey report dated the same date of the accident, presenting a valuation of $18,000. We accept that valuation as the damages for loss of "Donamay". We will ·enter judgment for property damages lost to the plaintiff in that amount.

■ The plaintiff also sought damages for injuries to himself arising out of the events leading him to be tossed into the sea from the "Donamay". Given the fact that the defendant made the decision himself, with no urging from Capt. Lake, to remain on board his boat during the tow, we will not make any award for that aspect of his claim.

Nor will we make any further award for loss of property on the Hatfield boat, because we find the plaintiff's proof deficient in that respect.

## JUDGMENT

THIS MATTER came on for trial before the Court without a jury. The Court, after the evidence presented by the plaintiff, dismissed the complaint from the bench, as against the corporate defendant. By memorandum opinion of even date herewith, we find in favor of the plaintiff against the remaining defendants. The premises considered, now therefore it is

264

ORDERED and ADJUDGED:

THAT plaintiff's complaint is DISMISSED, WITH PREJU-DICE, as against Antilles Shipping Corporation; and

THAT judgment will enter in favor of the plaintiff and against Henry Lake, in personam, and "Lomist II", in rem, jointly and severally, in the total sum of $18,000.